Good morning, Judge Gould, Judge Callahan, and Judge Bowe, and a special shout-out to Judge Boo. Boo, I'm a fellow Missourian, and welcome to California. Thank you, thank you. May it please the Court, Anne Barhom for the petitioner, Elizabeth Lona. Well, since we're talking Missouri, let me ask you my show-me question. Show me how your facts get around the Mendez-Gonzalez v. Barr case that was recently handed down. Let me say, let me just interject that I also would like to hear the answer to that, because I'm also originally from Missouri, growing up in a suburb of St. Louis. He's a St. Louis guy, totally different from Kansas City. And I'm from California, and I want to hear how the decision of Mendez-Gonzalez affects this. I'm from Kansas City. So I would like to address the fact that in this case, it really follows, is more Kentu-Banila v. Lynch, and not Mendez-Gonzalez case. There are many key differences in that. Mendez-Gonzalez was a vacatur of a conviction that occurred more than 15 years before the conviction was resolved. And also, the petitioner in Mendez-Gonzalez was not an LPR. In my case, the petitioner is an LPR. She was convicted of two aggravated felonies. So she committed some crime. She was convicted. She also left on her own, and she didn't appeal, right? And this was quite a few years after that. Now she wants to go back and have two esponte discretion exercised. If you look at Banila v. Lynch, it does discuss whether or not if the BIA reopens the case, then her removal will be as if it never happened. In Ms. Lona's case, she's a person who was convicted before DeCamp came out, before Rendon v. Lynch, and before Lopez Valencia v. Barr. So there were three. But if anyone waits long enough, they can find something that would be more favorable for them. And so I don't think Banila is meant to be a freeway. It's meant to be an alley. And you want to make it a freeway. I don't want to make it a freeway. I do recognize the special conditions under sua esponte reopening or reconsideration. However, if you look closely at Banila v. Lynch, it's really clear that this court found that there was justification to remand the case back to the BIA to discuss whether or not the reopening would then make that person eligible for consideration under cancellation of removal, 42A, for a permanent resident. Similarly, in Ms. Lona's case, she's a person who was an LPR. She was NTA'd in 2012. She was removed in 2013. And she did initially file for appeal to the BIA, but withdrew it because there was no hope at that point that she could, you know, find any relief. Decamp was not decided until a month and a half later. And then that may have solved the problem for 459, but it didn't solve the problem for 484. And Lopez Valencia found that 484 was actually not a categorical theft offense and therefore not an aggravated felony. So Ms. Lona needed all three of those cases to get some relief. And it's her argument that this is a fundamental change in the law because Lopez Valencia did not apply the modified categorical approach, as did Decamp and Rendon. Those two cases applied the modified categorical approach. And if you look at Lopez Valencia, the judge's decision in that case was very clear. It is 484 is not. But Decamp, Rendon, and Hernandez-Cruz all predated her motion for sui sponte reconsideration by either eight months or years, right? I mean, at most we're talking two years and six months. But at best you're talking eight months, right? At best. Actually, seven months. I counted. So I think you have to show that she presents an exceptional situation warranting sui sponte relief under Bonilla. Correct. But if you look at, for instance, if you look at the Supreme Court decision in Mathis versus the United States, Justice Kagan addresses one of the key issues, I think, which is coherence has a claim on the law. This is a very thorny area of the law. There's a lot of confusion around it, and, you know, it's taken this court almost three years to figure out, you know, how to apply the modified categorical approach to both Rendon versus Lynch and Lopez-Valencia versus Barr. Okay. Everyone said we want you to talk about Menendez-Gonzalez, even though you don't want to. So talk about it. Okay. Well, Menendez-Gonzalez is really a case that I do not think applies to this case at all. I think it helps your client. I'm sorry? It does not help your client. Well, I think it helps my client in the sense that in the decision in Menendez-Gonzalez, they specifically pointed out that there was a 15 years after the execution of the lawful deportation order. In Ms. Lona's case, we're only talking less than two years difference. I think Ms. Lona's case is much more akin to Bonilla. Bonilla versus Lynch should be... Okay. You're from Missouri, but it's Bonilla. Bonilla. That's how we say it in California, and that's how Hispanics say it. So it's Bonilla. That's the California lesson. So Bonilla is much more similar to this case and should be the case that this court should follow in applying whether or not Lopez-Valencia is a fundamental change in the law, and I would argue that it is. Okay. Do you have... I don't have additional questions. You have the additional time for rebuttal. Okay. Thank you. You can use it like that after we hear from the government. Thank you. Good morning. Good morning. May it please the Court. My name is Micah Engler on behalf of the Attorney General of the United States. The government is happy to talk about Menendez-Gonzalez because that case is so factually similar to this case and is, in fact, controlling of this case. Both cases involve an order of the immigration judge that was not appealed by the petitioners. Both cases involve untimely motions to reopen or reconsider, and most significantly, both cases involve the Board's discretionary determination not to sui sponte, reopen or reconsider the case. So are you saying we don't... All right, but we still have to look at Bonilla. Yes, Your Honor, but even under Bonilla, Bonilla talks about how generally this court does not have jurisdiction to address discretionary determinations by the Board, and in Bonilla they carved out, like you said, an alley. They said there is a limited exception, a narrow exception, and that is when the Board's decision relies on an erroneous constitutional or legal premise. Isn't that what we have here, though? Your Honor, that is not what we have here. Similar to Menendez-Gonzalez, what we have here is just a discretionary determination denying... But underneath that, I mean, I think we can all agree that we're all struggling to figure out Johnson, right? I mean, it's just we had two cases yesterday trying to figure out crime and violence, but there was a change, right? And this change affected the underlying conviction of the petitioner here, right? Yes, Your Honor. The whole issue regarding the change of law, whether it's been incremental or fundamental, the arguments that the petitioner is presenting, they're really red herrings to the real issue that is before us, and that's the discretionary determination by the Board. The Board didn't base its decision on the change in law. The Board based its decision on its discretionary authority, and it said because the petitioner did not appeal the decision of the immigration judge to the Board. That's what the Board said, and that is why it found the petitioner doesn't warrant reconsideration. So we don't even need to get into all the issues involved with how dramatic the change in law has been over the years. Well, let's talk about this, the Menendez-Gonzalez area. So if we're talking about where you would look to whether what they're doing, you know, what they're doing, if there's, let's say, if everyone else like her, if she could show that everyone else like her got relief under Suis Bonte, would that help her under Menendez-Gonzalez? If she could demonstrate a settled practice or adopted rule, I think, is what the Court used in Menendez-Gonzalez, then that could potentially help her. But in this case, we don't have anything even close to resembling an adopted rule. In Menendez-Gonzalez, the petitioner brought 10 unpublished decisions. We don't even have 10 unpublished decisions. And there the Court said that that's certainly not enough to show a settled practice or adopted rule by the Board. Well, the settled practice thing, what would concern me about that, let's just say, you know, that when something's discretionary as a judge, all judges don't decide cases the same, all right, when we have discretion. And so it's possible someone else could have exercised their, another, someone else could have exercised that discretion differently, and if the government had appealed, then you might lose either way if it's a matter of discretion. If we can't review discretion. But I'm thinking like, you know, I think just like advocates sometimes when they find out who the panel is, they go, ugh, you know, oh, yay, Judge Callahan, ugh, Judge Callahan, you know, as far as, and judges may come to different conclusions when it's an exercise of discretion. So it doesn't seem that settled, a settled practice would be just because two judges would do it differently, right? I mean, that doesn't seem like that would be a good way for us to then be able to review discretion. Absolutely, Your Honor, and even in Menendez-Gonzalez, this court has a paragraph saying we're not just going to assume that there's a settled practice because we have a couple cases. The court, the board really has to demonstrate that they've adopted a new rule. So if in every decision we see the board is doing it a certain way, and maybe even explicitly saying that they're doing things a certain way. Or if the Department of Justice came out with a guideline that said all the people that fall in this particular time period and could benefit from DeCamp, Rendon, and I think what was the other case? There was another case that they, and Hernandez-Cruz, I guess. If all the people in this period that could benefit from that, it's our position that it should be reopened. That's exactly right, Your Honor, and we don't have anything even close to resembling that in this case. So just so that we understand your analysis, I think much like Judge Gould did previously, if you were writing the disposition for the court, how would you write it regarding Bonilla and Menendez-Gonzalez? Your Honor, I would write it as Menendez-Gonzalez is controlling in this case. In both cases, the board exercised its discretionary authority, its sua sponte authority, in denying the motions to reopen or reconsider. And given that, this court does not have jurisdiction to review the board's decision, and I would deny the petition for review on that basis. But it seems unusual that you wouldn't even, because Bonilla is what allowed, was the first inroad to it. So you wouldn't even mention Bonilla? Would you, I mean, would you say that Menendez-Gonzalez is an interpretation of what exceptional circumstances means and it has to be a settled practice? I don't quite, I don't know how we can, I don't know how we can ignore Bonilla here. Well, Bonilla is talking about a situation where the board's reasoning relies on a constitutional or legally erroneous premise. So in Menendez-Gonzalez, the court said that the board's decision didn't rely on that, and in this case, the board's decision also does not rely on that. Okay. Does anyone have additional questions of the government? Ms. Strangler, you got any Missouri connections? Unfortunately, I do not. It's okay. That's not a factor in deciding cases. For some of us. Thank you, Your Honors. All right. So you said you wanted three minutes for rebuttal. You actually have six minutes and 50 seconds if you want to take it all. Thank you, Your Honor. And you'll say Bonilla, right? Bonilla. Yeah. May it please the court, I'm Jenny Medina for rebuttal. I do believe that Menendez is not controlling, but it does help in our situation because in Menendez, there was no, the underlying board decision in Menendez, there was no statement as to why the board even denied the previous motion to reopen. Well, but there isn't any, the problem is here, there's no showing here that there's any settled way that they're handling these type of things. So how do you get, how do we get there on this? Because part of, when you, anytime we're going to review discretion, I mean, you start with the premise we don't get to review a discretionary decision of the board. Do you accept that? Yes. And then Bonilla says it's got to be exceptional circumstances and it's got to be constitutional or legal. Correct. Okay. So if it's not constitutional or legal, then you look at settled practice? And what's it, what proof do you have of a settled practice here? Right. So first of all, there, I believe that there was legal error in the board's decision because it simply stated that the petitioner, Ms. Lona, should have waived her appeal and therefore that's it. So there was no issue as to the legal issue of the fundamental change in law that was created in Lopez Valencia. Well, Lopez Valencia was relatively minor and incremental as opposed to the type of profound and truly exceptional change in the law that the BIA has stated is an appropriate ground for sua sponte, you know, reconsideration. You've got, you know, her argument that she's no longer removable is based not only on Lopez Valencia but also DeCamp, Brendan, and Hernandez-Cruz, all of which predated her motion for sua sponte reconsideration by either eight months or years. And then she waived her appeal and she was removed on her own motion. So even though that's not, it may not be entirely dispositive like the government says, but it's, it seems like that's an uphill battle for exceptional, an exceptional situation under Bonilla. Right. But it is because of the change in the law now that a legal permanent resident is no longer removable because of a conviction under theft. So it is a fundamental change in the law. And this was never even addressed in the board, the board's decision. So your position would be even 15 years later, everyone that could now benefit from DeCamp, Brendan, and Hernandez-Cruz has exceptional circumstances under Bonilla? No, because that would be like you previously stated, the entrance of a freeway. The narrow exception is here because it wasn't even considered at the board. Well, but the people 15 years ago would be the same thing. They wouldn't have the, they wouldn't have had the benefit. It wouldn't have been considered. So why, it's just 15 years as opposed to two years or as opposed to eight months. Why is, why is that, what is different? The difference here is that it was only two years and seven months. And that is the reason why Menendez in this situation is not. If it's two years and seven months in one day, that's not exceptional. Where do we draw the line? You know, that's, part of the reason we can't sui sponte, we can't review something sui sponte, is there's no, there's no, there's no standards for it. And so I'm, I'm still not hearing what your bright line is here. Right, and the bright line here as to the exceptional circumstances is because there is prior, prior unpublished decisions before the board that do state that a fundamental change in law is cause for reopening of a case. Okay. We don't have additional questions, but you have, the time is yours if you want to use it. Yes, thank you. So as previously stated, there are exceptional circumstances in this situation because a respondent could not have even filed a motion to reopen, reconsider, until the decision in Lopez Valencia. And as such, excuse me, reopening is, is necessary in her case without having to go into opening a freeway and instead just allowing a narrow exception as in Bonilla. Thank you. Okay, thank you both for your argument. This matter will stand submitted.
judges: Gould, Callahan, Bough